UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PLUMBERS' UNION LOCAL NO. 12 PENSION FUND, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 08-cv-10446 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | STIPULATION AND AGREEMENT OF |
| vs. | ) | SETTLEMENT |
| | ) | |
| NOMURA ASSET ACCEPTANCE CORPORATION, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

855054_4

This Stipulation and Agreement of Settlement, dated as of July 29, 2013 (the "Stipulation") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure.   Subject to the approval of the Court, this Stipulation is made and entered into by and among the following Settling Parties (as defined below) to the above-entitled Litigation:  (i) the Lead Plaintiffs (on behalf of themselves and each of the Class Members), by and through their counsel of record in the Litigation; and (ii) the Defendants, by and through their counsel of record in the Litigation.   Upon and subject to the terms and conditions hereof, the Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined below) and result in the complete dismissal of this Litigation with prejudice as against all Defendants.

## I.  THE LITIGATION

On January 31, 2008, an action was filed in the Superior Court of the Commonwealth of Massachusetts, County of Suffolk, asserting claims under the Securities Act of 1933 (the "Securities Act") on behalf of all purchasers of Mortgage Pass-Through Certificates of Nomura Asset Acceptance Corporation ("NAAC") in eight (8) offerings pursuant to registration statements and prospectus supplements issued in connection therewith between July 2005 and November 2006.  On March 18, 2008, the action was removed to the United States District Court for the District of Massachusetts (the "District Court").   The action is referred to herein as the "Litigation."   On December 19, 2008, the District Court appointed Plumbers' Union Local No. 12 Pension Fund, Plumbers & Pipefitters' Welfare Educational Fund, and NECA-IBEW Health & Welfare Fund as lead plaintiffs pursuant to §27 of the Securities Act, 15 U.S.C. §77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995, and approved their selection of Robbins Geller Rudman & Dowd LLP (then Coughlin Stoia Geller Rudman & Robbins LLP) as Lead Counsel and Shapiro Haber & Urmy LLP as Liaison Counsel.

855054_4

On January 20, 2009, Lead Plaintiffs filed their Consolidated Amended Complaint for Violation of §§11, 12(a)(2) and 15 of the Securities Act, the operative complaint in the Litigation (the "Complaint"). The Complaint asserted claims related to eight (8) offerings issued pursuant to two registration statements filed with the U.S. Securities and Exchange Commission ("SEC") by certain defendants on July 22, 2005, and February 28, 2006. On March 13, 2009, Defendants filed motions to dismiss, which the District Court granted with prejudice on September 30, 2009. Lead Plaintiffs appealed and, on January 20, 2011, the United States Court of Appeals for the First Circuit (the "Court of Appeals") issued an opinion affirming in part and vacating in part the District Court's decision. The Court of Appeals allowed certain of Lead Plaintiffs' claims to proceed on behalf of only those investors who acquired certificates in either of the two (2) trusts that Lead Plaintiffs purchased, Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AP1, and Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AF1, against only the following defendants: Nomura Asset Acceptance Corporation; Alternative Loan Trust 2006-AP1; Alternative Loan Trust 2006-AF1; Nomura Securities International, Inc.; John P. Graham; Nathan Gorin; John McCarthy; and David Findlay. The Court of Appeals affirmed the dismissal with prejudice of all of Lead Plaintiffs' claims (i) related to Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR2; Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR4; Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AF2; Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR1; Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR3; and Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-WF1; and/or (ii) asserted against the following defendants: Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR2; Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR4;

Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AF2; Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR1; Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR3; Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-WF1; UBS Securities LLC; Greenwich Capital Markets, Inc.; Citigroup Global Markets Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; and Goldman, Sachs & Co. Lead Plaintiffs did not appeal the decision of the Court of Appeals, and the action was remanded to the District Court.

On June 13, 2011, the District Court granted Lead Plaintiffs a preliminary discovery period in which to take discovery concerning loans held by the two remaining trusts originated by the First National Bank of Nevada ("FNBN") to show "a sufficiently plausible basis" for permitting the litigation to proceed. Over the next nine months, Lead Plaintiffs conducted discovery, including: (i) obtaining party and third-party document productions of over half a million pages; (ii) deposing NAAC; (iii) obtaining a declaration from a former FNBN underwriter; and (iv) retaining a loan underwriting expert who prepared a report.

On April 3, 2012, Lead Plaintiffs moved to proceed with the litigation on the basis of their FNBN discovery. On June 12, 2012, Defendants filed a renewed motion to dismiss the Complaint on standing and timeliness grounds. On October 1, 2012, the District Court granted Lead Plaintiffs' motion to proceed with the litigation and denied Defendants' renewed motion to dismiss. Upon Defendants' requests, the District Court certified its order for interlocutory appeal pursuant to 28 U.S.C. §1292(b) on October 30, 2012, and the Court of Appeals denied Defendants' petition for interlocutory appeal on January 25, 2013. In February 2013, full discovery commenced, including: (i) party and third-party document productions of nearly 1,000,000 pages, and (ii) preparation of a report by a class certification expert retained by Lead Plaintiffs.

On May 7, 2013, Lead Plaintiffs moved to certify a class of all persons or entities who purchased or otherwise acquired the Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AP1 Mortgage Pass-Through Certificates and/or the Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AF1 Mortgage Pass-Through Certificates prior to January 31, 2008, and were damaged thereby.  On May 23, 2013, the District Court granted a joint motion to stay the case in light of a mediation scheduled between Lead Plaintiffs and Defendants. Pursuant to the District Court's orders, Defendants' opposition to Lead Plaintiffs' motion for class certification is due on August 12, 2013.

On June 5, 2013, Lead Plaintiffs and Defendants participated in a full-day mediation regarding potential settlement of the Litigation facilitated by Hon. Daniel Weinstein (Ret.).  In connection with the mediation process, Lead Plaintiffs conducted arm's-length negotiations with respect to a potential compromise and settlement of the Litigation with a view toward achieving the best relief possible consistent with the interests of the Class.  Lead Plaintiffs and Defendants were unable to reach agreement as to a settlement at the conclusion of the one-day mediation session. However, following the mediation session, Judge Weinstein submitted a mediator's proposal to both Lead Plaintiffs and Defendants.  The mediator's proposal of $21.2 million in cash was accepted by Lead Plaintiffs and Defendants.

## II.  ASSERTIONS AND DENIALS OF THE SETTLING PARTIES AND THE BENEFITS OF THE SETTLEMENT

Lead Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims.  However, Lead Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and likely appeals.  Lead Plaintiffs have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation,

as well as the difficulties and delays inherent in such litigation. Lead Plaintiffs are also mindful of the problems of proof, and possible defenses to the securities law violations asserted in the Litigation. Lead Plaintiffs believe that the Settlement set forth in the Stipulation confers substantial immediate benefits upon the Class Members, is in the best interests of the Lead Plaintiffs and the Class Members, and is fair, reasonable, and adequate.

Defendants, individually and collectively, have denied and continue to deny each and all of the claims and contentions alleged by Lead Plaintiffs in the Litigation. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. Defendants further deny that Lead Plaintiffs or the Class have suffered damages, that the prices of the Certificates were artificially inflated during the Relevant Time Period (as defined below) as the result of any alleged misrepresentations, omissions, nondisclosures or otherwise by Defendants, and that Lead Plaintiffs or the Class were harmed by the conduct alleged in the Complaint.

## III.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW THEREFORE, without any admission or concession on the part of Lead Plaintiffs of any lack of merit of the Litigation, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by any of Defendants, it is hereby

STIPULATED AND AGREED, by and among Lead Plaintiffs, acting on behalf of themselves and all Class Members, and Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, in consideration of the benefits flowing to the parties to the Stipulation, the Litigation, the Released Claims, and all matters encompassed within the scope of the releases set forth or referenced in this Stipulation shall be finally, fully and

forever compromised, settled, released, and discharged and the Litigation shall be dismissed with prejudice as to all Defendants, upon and subject to the following terms and conditions:

## 1.    Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1     "Alternative Loan Trust 2006-AP1" or "NAA 2006-AP1" means Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AP1.

1.2     "Alternative Loan Trust 2006-AF1" or "NAA 2006-AF1" means Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AF1.

1.3     "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.4     "Certificates" means the Mortgage Pass-Through Certificates issued by Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AP1 and Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AF1 pursuant to Registration Statement Nos. 333-126812 and 333-132108, filed with the SEC on July 22, 2005, and April 19, 2006, respectively (as amended).

1.5     "Claimant" means any Class Member who submits a Proof of Claim and Release in such form and manner, and within such time, as the Court shall prescribe.

1.6     "Claims Administrator" means Gilardi & Co. LLC.

1.7     "Class," "Class Members," or "Members of the Class" mean all Persons who purchased or otherwise acquired the Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AP1 Mortgage Pass-Through Certificates and/or the Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AF1 Mortgage Pass-Through Certificates during the Relevant Time Period.  Excluded from the Class are: the Defendants, FNBN, Metrocities

Mortgage, LLC and their respective successors and assigns; past and current officers and directors of the Nomura Defendants; members of the immediate families of the Individual Defendants; the legal representatives, heirs, successors or assigns of the Individual Defendants; any entity in which any of the above excluded Persons have or had a majority ownership interest; and any Person who timely and validly seeks exclusion from the Class. Also excluded from the Class are any Persons that have filed any other actions against any Defendant arising out of the purchase or acquisition of the Certificates.

 1.8 "Complaint" means the Consolidated Amended Complaint for Violation of §§11, 12(a)(2) and 15 of the Securities Act of 1933, filed in the Litigation on January 20, 2009.

 1.9 "Court" means the United States District Court for the District of Massachusetts.

 1.10 "Defendants" means the Nomura Defendants and the Individual Defendants.

 1.11 "Defendants' Counsel" means Goodwin Procter LLP and Wilmer Cutler Pickering Hale and Dorr LLP.

 1.12 "Effective Date" means the first date by which all of the events and conditions specified in ¶8.1 of the Stipulation have been met and have occurred and the Settlement contemplated by the Stipulation shall become effective.

 1.13 "Escrow Account" means the escrow account established and controlled by the Escrow Agent into which the settlement amount of Twenty-One Million Two Hundred Thousand Dollars ($21,200,000) shall be deposited.

 1.14 "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP, or its successors.

 1.15 "Final" means when the last of the following with respect to the Judgment approving the Stipulation, substantially in the form of Exhibit C attached hereto, shall occur: (i) the expiration

of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) days following the entry of the Judgment, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the thirtieth (30th) day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such thirtieth (30th) day; and (iii) if a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise, and in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include, but is not limited to, any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of payment or allocation of attorneys' fees and award of costs or the Plan of Allocation of the Net Settlement Fund.

     1.16    "Final Approval Hearing" means the hearing to determine whether the proposed Settlement embodied by this Stipulation is fair, reasonable and adequate to the Class, and whether the Court should enter a Judgment approving the proposed Settlement.

     1.17    "Final Approval Order" means the order (substantially in the form attached hereto as Exhibit B) to be entered by the Court finally approving the Settlement and dismissing this Litigation with prejudice.

855054_4

1.18    "Gross Settlement Fund" means the principal amount of Twenty-One Million Two Hundred Thousand Dollars ($21,200,000), plus any accrued interest earned thereon.

1.19    "Individual Defendants" means John P. Graham, Nathan Gorin, John McCarthy, and David Findlay.

1.20    "Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit C, or such other substantially similar form agreed to by the Settling Parties.

1.21    "Lead Counsel" means Robbins Geller Rudman & Dowd LLP.

1.22    "Lead Plaintiffs" means Plumbers' Union Local No. 12 Pension Fund, Plumbers & Pipefitters' Welfare Educational Fund, and NECA-IBEW Health & Welfare Fund.

1.23    "NAAC" means Nomura Asset Acceptance Corporation.

1.24    "NSI" means Nomura Securities International, Inc.

1.25    "Net Settlement Fund" has the meaning defined in ¶6.2 below.

1.26    "Nomura Defendants" means Defendants NAAC, NSI, Alternative Loan Trust 2006-AP1, and Alternative Loan Trust 2006-AF1.

1.27    "Person" means a natural person, individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their respective spouses, heirs, predecessors, successors, representatives or assignees.

1.28    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses and interest as may be awarded by the Court.

855054_4

1.29    "Preliminary Approval Order" means the order (substantially in the form attached hereto as Exhibit A) to be entered by the Court preliminarily approving the Settlement and directing that notice be provided to the Class Members.

1.30    "Related Parties" means the parents, affiliates and subsidiaries of each Defendant, and their and each Defendant's respective past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, principals, controlling shareholders, attorneys, accountants, auditors, underwriters, investment advisors, agents, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, affiliates, joint ventures, trustees, assigns, assignees, spouses, heirs, estates, related or affiliated entities, any entity in which a Defendant has a controlling interest, any member of an Individual Defendant's immediate family, any trust of which an Individual Defendant is the settlor or which is for the benefit of an Individual Defendant and/or any member of an Individual Defendant's immediate family, and any entity in which a Defendant and/or any member of an Individual Defendant's immediate family has or have a controlling interest (directly or indirectly), and the legal representatives, predecessors, successors and assigns of any of the foregoing.

1.31    "Released Claims" shall collectively mean all claims (including "Unknown Claims" as defined in ¶1.41 below), demands, rights (including any right to appeal the Court's dismissal of any claims in the Litigation related to securities originally pleaded but no longer at issue in this Litigation), liabilities and causes of action of every nature and description whatsoever, known or unknown, contingent or absolute, mature or immature, discoverable or undiscoverable, whether concealed or hidden, suspected or unsuspected, which now exist, or heretofore have existed, have been asserted or could have been asserted under federal, state, common or foreign law or otherwise, by Lead Plaintiffs or any Class Member against Defendants and/or their Related Parties based upon

- 10 -

or arising out of (i) both (a) the allegations, facts, transactions, events, occurrences, disclosures, statements, representations, acts, omissions or failures to act which were, could have been, or could in the future be alleged in the Litigation, and (b) the purchase or other acquisition of the Certificates or any interest therein by Lead Plaintiffs or any Class Member during the Relevant Time Period; or (ii) the administration of the Net Settlement Fund. Released Claims shall not include claims to enforce the Settlement. Released Claims shall also not include any claims that have already been asserted in any other actions filed by any Person against any Defendant arising out of the purchase or acquisition of the Certificates.

1.32 "Released Parties" means each and all of the Defendants and each and all of their Related Parties.

1.33 "Relevant Time Period" means the period from July 22, 2005, through January 31, 2008, inclusive.

1.34 "Settlement" means the settlement contemplated by this Stipulation.

1.35 "Settlement Amount" means Twenty-One Million Two Hundred Thousand Dollars ($21,200,000).

1.36 "Settling Parties" means, collectively, Defendants and Lead Plaintiffs, on behalf of themselves and the Class Members.

1.37 "Stipulation" means this Stipulation and Agreement of Settlement, including the recitals and exhibits hereto.

1.38 "Supplemental Agreement" means the agreement described in ¶8.3 below.

1.39 "Taxes" means all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned on the Settlement Amount described in ¶2.1 below.

855054_4

1.40    "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.7.

1.41    "Unknown Claims" means collectively any Released Claims that Lead Plaintiffs or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision not to object to or opt out of this Settlement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs shall expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, the provisions, rights and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor**.

Lead Plaintiffs shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542. Lead Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiffs shall expressly, fully, finally and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected

- 12 -

or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Lead Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

### 2.     The Settlement

#### a.     Settlement Consideration

2.1     In consideration of the terms of this Stipulation, Defendants shall pay or cause the Settlement Amount to be paid into the Escrow Account no later than five (5) business days after the execution of this Stipulation by Lead Plaintiffs and Defendants and the provision by Lead Plaintiffs of wiring instructions, a Form W-9 for the payee, and the email address for the payee to Stephen D. Poss, Esq., with a copy to Daniel Roeser, Esq.  If the agreed upon sum is not timely transferred to the Escrow Account, the Settlement may be voided at the option of Lead Plaintiffs in accordance with ¶8.5 below.

#### b.     The Escrow Agent

2.2     The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government or an agency thereof (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction accounts up to the limit of Federal Deposit Insurance Corporation insurance.  Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent.  The Gross Settlement Fund shall

bear all risks related to the investments of the Settlement Amount in accordance with the guidelines set forth in this paragraph.

2.3     The Escrow Agent shall not disburse the Gross Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the written agreement of Lead Counsel and Defendants' Counsel.

2.4     Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.

2.5     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.6     Prior to the Effective Date, the Escrow Agent, without further approval of Defendants or the Court, may pay from the Gross Settlement Fund up to $500,000.00 in notice and administration costs ("Class Notice and Administration Costs") associated with the administration of the Settlement, including, without limitation: the cost of identifying and locating Members of the Class, mailing the Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release and publishing notice (such amount shall include, without limitation, the actual costs of publication, printing and mailing the Notice, and reimbursement to nominee owners for forwarding notice to their beneficial owners), soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims.  Prior to the Effective Date, payment of any Class Notice and Administration Costs exceeding $500,000.00 shall require notice to and agreement from the

Defendants, through Defendants' Counsel, which agreement shall not be unreasonably refused. Subsequent to the Effective Date, without further approval by Defendants or the Court, the Gross Settlement Fund may be used by Lead Counsel to pay reasonable and necessary Class Notice and Administration Costs in excess of $500,000.00. Except as required by ¶2.1 concerning payment of the Settlement Amount and subject to ¶¶2.8 and 6.1 below, Defendants are not responsible for, and shall not be liable for, any costs incurred in connection with providing notice to the Class, locating Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund, or processing Proof of Claim and Release forms.

> **c.   Taxes**

2.7   The Settling Parties and the Escrow Agent agree:

(a)   The Gross Settlement Fund, which includes the Class Notice and Administration Costs, is intended at all times to be treated as a "qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.7, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)   For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the Escrow Agent shall be the "administrator" of the Gross Settlement Fund, as that term is defined in §1.468B. The Escrow Agent shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with

respect to the Gross Settlement Fund (including, without limitation, the returns described in Treasury Regulation §1.468B-2(k)).  Such returns (as well as the election described in ¶2.7(a) hereof) shall be consistent with this ¶2.7 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned on the Settlement Amount shall be paid out of the Gross Settlement Fund as provided in ¶2.7(c) hereof.

        (c)      All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned on the Settlement Amount, including any Taxes or tax detriments that may be imposed upon Defendants or their Related Parties with respect to any income earned on the Settlement Amount for any period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) Tax Expenses shall be paid out of the Gross Settlement Fund; in no event shall Defendants, their Related Parties, or Defendants' Counsel have any responsibility for, or liability whatsoever with respect to, the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Gross Settlement Fund and shall be timely paid by the Escrow Agent out of the Gross Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(1)(2)); neither Defendants, their Related Parties, nor their counsel are responsible therefore, nor shall they have any liability with respect thereto.  The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

- 16 -

(d)     Except as required by ¶2.1 concerning payment of the Settlement Amount and subject to ¶¶2.8 and 6.1 below, Defendants and the Related Parties shall not have any responsibility for Taxes or Tax Expenses, nor shall they be liable for any claims with respect thereto.

### d.     Termination of the Settlement

2.8     In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, the Settlement Amount, including accrued interest, less the expenses, Taxes and Tax Expenses described in ¶¶2.6 and 2.7 hereof actually incurred or due and owing, shall be refunded to such Persons that paid the Settlement Amount pursuant to written instructions from Defendants' Counsel.

### 3.     Certification of the Class

3.1     Solely for purposes of this Settlement, and subject to approval by the Court, the Settling Parties agree that the Class shall be certified and Lead Plaintiffs and Lead Counsel shall be appointed as representatives of the Class pursuant to Federal Rule of Civil Procedure 23, as set forth in the Preliminary Approval Order.  Should the Class not be certified, or should any court amend the scope of the Class, each of the Settling Parties reserves the right to void this Stipulation in accordance with ¶8.5 hereof.

### 4.     Preliminary Approval Order and Final Approval Hearing

4.1     Promptly after execution of the Stipulation, Lead Counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, and approval for mailing a settlement notice ("Notice"), substantially in the form of Exhibit A-1 attached hereto, and publication of a summary notice ("Summary Notice"), substantially in the form of Exhibit A-3 attached hereto.  The Notice

- 17 -

shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application as defined in ¶7.1 below, and the date of the Final Approval Hearing.

4.2     Lead Counsel shall request that after notice is given, the Court hold a Final Approval Hearing and approve the Settlement of the Litigation as set forth herein.  Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**5.     Releases**

5.1     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Litigation and any and all Released Claims as against all Released Parties.

5.2     Upon the Effective Date, the Lead Plaintiffs shall have, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished, dismissed, and discharged all Released Claims against the Released Parties, with prejudice and on the merits, whether or not such Class Member executes and delivers a Proof of Claim and Release form.  The Settling Parties acknowledge, and the Class Members shall be deemed by operation of law to acknowledge, that the waiver of Unknown Claims, and of the provisions, rights and benefits of §1542 of the California Civil Code and of any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to §1542 of the California Civil Code, was bargained for and is a key element of the Settlement of which the release in this paragraph is a part.

5.3     The Proof of Claim and Release form ("Proof of Claim") to be executed by Class Members shall release all Released Claims against the Released Parties and shall be substantially in the form contained in Exhibit A-2 attached hereto.

855054_4

5.4     Upon the Effective Date, Lead Plaintiffs and all Class Members and anyone claiming through or on behalf of any of them, are forever barred and enjoined from commencing, instituting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting against any of the Released Parties, and each of them, any of the Released Claims, whether or not such Class Member executes and delivers a Proof of Claim.

5.5     Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged the Lead Plaintiffs, Class Members, Lead Counsel, and their attorneys, employees, heirs, successors, and assigns from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims.

6.      **Administration and Calculation of Claims, Final Awards and Supervision and Distribution of Net Settlement Fund**

6.1     The Claims Administrator shall administer and calculate the claims submitted by Class Members.  The Claims Administrator will be subject to such supervision and direction from the Court and/or Lead Counsel as may be necessary or as circumstances may require.  Defendants have already provided to Lead Plaintiffs, without any charge to Lead Plaintiffs or the Class, their lists of Persons who held or purchased the Certificates during the Relevant Time Period in electronic and searchable form (*i.e.*, an Excel file) and shall provide the address information in their possession for those Persons within seven (7) calendar days of execution of this Stipulation, without charge, as appropriate for providing notice to the Class.

6.2     The Gross Settlement Fund shall be applied as follows:

- 19 -

(a)     to pay all the fees and expenses reasonably and actually incurred in connection with providing notice to the Class, locating Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim and paying escrow fees and costs, if any;

(b)     to pay the Taxes and Tax Expenses described in ¶2.7 above;

(c)     to pay Lead Plaintiffs' attorneys' fees and expenses and Lead Plaintiffs' expenses, including lost wages, if and to the extent allowed by the Court (the "Fee and Expense Award"); and

(d)     after the Effective Date, to distribute the balance of the Gross Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.3     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Claims Administrator, under the supervision of Lead Counsel and subject to the Court's jurisdiction, shall distribute the Net Settlement Fund to Authorized Claimants, subject to and in accordance with the following:

(a)     Within one-hundred and twenty (120) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and as are reasonably available to the Authorized Claimant.

- 20 -

(b)     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Parties concerning any Released Claims.  Notwithstanding the foregoing, Lead Counsel shall have the discretion to accept late-submitted claims for processing so long as distribution of the Net Settlement Fund is not materially delayed thereby.

(c)     The Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.  Defendants shall not have a reversionary interest in the Net Settlement Fund.  If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, distribute such balance among Authorized Claimants who negotiated the checks sent to them in the initial distribution in an equitable and economical fashion.  These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance shall then be donated to an appropriate non-profit organization designated by Lead Counsel.

6.4     This Settlement is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Gross Settlement Fund will be returned to Defendants.  Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the maintenance, investment or distribution of the Gross Settlement Fund; the establishment of the Escrow Account; the establishment or

- 21 -

administration of the Plan of Allocation; the determination, administration, or calculation of claims; the payment or withholding of Taxes or Tax Expenses; the distribution of the Net Settlement Fund; the administration of the Settlement; or any losses incurred in connection with such matters.

6.5     No Person shall have any claim against Lead Plaintiffs, Lead Counsel, the Released Parties, the Claims Administrator or other entity designated by Lead Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.  This does not include any claim by any party for breach of this Stipulation.  The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the maintenance, investment or distribution of the Gross Settlement Fund; the establishment or maintenance of the Escrow Account; the establishment or administration of the Plan of Allocation; the determination, administration, or calculation of claims; the payment or withholding of Taxes or Tax Expenses; the distribution of the Net Settlement Fund; the administration of the Settlement; or any losses incurred in connection with such matters. Defendants take no position with respect to the provisions of this Stipulation governing those issues. The Released Parties shall have no further or other liability or obligations to Lead Plaintiffs, Lead Counsel or any Class Member with respect to the Released Claims, except as expressly stated in this Stipulation.

6.6     It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect or delay the finality of

the Court's Judgment approving this Stipulation and the Settlement set forth herein (including the releases contained herein), or any other orders entered pursuant to this Stipulation.  The Plan of Allocation is not a necessary term of this Stipulation, and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiffs and Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Litigation.

6.7     The Court shall maintain jurisdiction over all proceedings with respect to the Plan of Allocation, including disputed questions of law and fact with respect to the administration, processing and validity of Proofs of Claims submitted to the Claims Administrator.

### 7.     Lead Plaintiffs' Attorneys' Fees and Expenses

7.1     Counsel for Lead Plaintiffs may submit an application or applications (the "Fee and Expense Application") for distributions to them from the Gross Settlement Fund for: (a) an award of attorneys' fees; plus (b) payment of expenses, including Lead Plaintiffs' expenses (including lost wages) paid pursuant to 15 U.S.C. §77z-1(a)(4), and the fees of any experts or consultants, incurred in connection with prosecuting the Litigation; plus (c) any interest on such fees and expenses at the same rate and for the same time periods as earned by the Gross Settlement Fund (until paid), as may be awarded by the Court.  Lead Counsel reserves the right to make additional applications for distributions from the Gross Settlement Fund for fees and expenses incurred.

7.2     The Fee and Expense Award, as awarded by the Court, shall be paid to Lead Counsel from the Gross Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses.  Lead Counsel may thereafter allocate the attorneys' fees and expenses among counsel for plaintiffs in a manner in which they in good faith believe reflects the contributions of such counsel to the institution, prosecution and resolution of the Litigation.  In the

event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified by final non-appealable order, or the Stipulation is canceled or terminated for any reason, and in the event that the Fee and Expense Award has been paid to any extent, then, without regard to whether Lead Counsel has allocated the attorneys' fees and expenses among counsel for plaintiffs, Lead Counsel shall be obligated, within ten (10) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, to refund to the Gross Settlement Fund the fees and expenses previously paid to Lead Counsel from the Gross Settlement Fund plus interest thereon at the same rate as earned by the Gross Settlement Fund in an amount consistent with such reversal or modification.

7.3     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses, including the fees of experts and consultants as well as any application of Lead Plaintiffs for an award of expenses, including lost wages, to be paid out of the Gross Settlement Fund, is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth herein (including the releases contained herein).

7.4     Defendants and their Related Parties shall have no responsibility for or liability with respect to the payment of any Fee and Expense Award to any counsel for plaintiffs over and above payment of the Settlement Amount, or with respect to the allocation among plaintiffs' counsel.

8. **Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

8.1     The Effective Date of this Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     the Settlement Amount has been deposited into the Escrow Account maintained by the Escrow Agent, as required by ¶2.1 hereof;

(b)     the Court has entered the Preliminary Approval Order, as required by ¶4.1 above;

(c)     Defendants have not exercised their option to terminate the Stipulation pursuant to ¶8.3 below;

(d)     the Court has entered the Final Approval Order;

(e)     the Court has entered the Judgment in the form of Exhibit C attached hereto, or such other substantially similar form agreed to by the Settling Parties; and

(f)     the Judgment has become Final, as defined in ¶1.15 above.

8.2     Upon the occurrence of all of the events referenced in ¶8.1 above, any and all remaining interest or right of Defendants in or to the Gross Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶8.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶8.5 hereof unless Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

8.3     Defendants shall have the option to terminate the Settlement if the portion of Class Members, who would otherwise be entitled to participate as Members of the Class, but who timely and validly request exclusion pursuant to ¶¶9.1 and 9.2 below, equals or exceeds the amount (the "Opt-Out Threshold") set forth in a separate agreement (the "Supplemental Agreement") executed between Lead Counsel and Defendants' Counsel.  The Opt-Out Threshold may be disclosed to the

- 25 -

Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the Opt-Out Threshold as confidential.  In the event of a termination of this Settlement pursuant to the Supplemental Agreement, this Stipulation shall become null and void and of no further force and effect.

        8.4     Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, then within ten (10) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the other, the Settlement Amount (including accrued interest if any), less any expenses and costs reasonably and actually incurred pursuant to ¶2.6 above and/or actually and properly paid from the Class Notice and Administration Costs and Taxes and Tax Expenses that have been paid pursuant to ¶2.7 above, shall be refunded by the Escrow Agent pursuant to written instructions from Defendants' Counsel.  At the request of Defendants' Counsel, the Escrow Agent or its designee shall apply for any tax refund owed on the Gross Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written direction from Defendants' Counsel.

        8.5     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation immediately prior to June 5, 2013.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.6-2.8, 8.4-8.6, 10.1 and 11.5-11.6 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall

- 26 -

be treated as vacated, nunc pro tunc.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall constitute grounds for cancellation or termination of the Stipulation.

8.6     If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither the Lead Plaintiffs nor Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed for notice costs and Taxes and Tax Expenses pursuant to ¶¶2.6-2.7 above.  In addition, any expenses already incurred and properly chargeable pursuant to ¶2.6 above at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶2.8 and 8.4 above.

8.7     If a case is commenced with respect to any Defendant under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Amount, or any portion thereof, by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not deposited into the Escrow Account by others within fifteen (15) business days thereafter, then, at the election of Lead Plaintiffs, the Settling Parties shall jointly move the Court to vacate and set aside the releases given and the Judgment entered and the Defendants, Lead Plaintiffs and the Class Members shall be restored to their litigation positions immediately prior to June 5, 2013, and the Settlement Amount (including accrued interest if any), less any expenses and costs reasonably and actually incurred pursuant to ¶2.6 above and/or actually and properly paid from the Class Notice and Administration Costs and Taxes and Tax Expenses that

have been paid pursuant to ¶2.7 above, shall be refunded by the Escrow Agent as provided in ¶8.4 above.

9.    **Requests for Exclusion**

9.1    A Class Member requesting exclusion from the Class shall be requested to provide the following information to the Claims Administrator: (i) name; (ii) address; (iii) telephone number; (iv) identity and original face value of Mortgage Pass-Through Certificates purchased (or otherwise acquired) or sold, which are traceable to Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AP1 or Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AF1; (v) prices or other consideration paid or received for such Mortgage Pass-Through Certificates; (vi) to the extent available and feasible, principal payments received for such Mortgage Pass-Through Certificates; (vii) the date of each purchase or sale transaction; and (viii) a statement that the Person wishes to be excluded from the Class.  Unless otherwise ordered by the Court, any Class Member who does not submit a timely written request for exclusion as provided by ¶¶9.1 and 9.2 shall be bound by the Settlement in this Stipulation.  Lead Plaintiffs shall request that the deadline for submitting requests for exclusion be twenty-one (21) calendar days prior to the Final Approval Hearing.

9.2    The Claims Administrator shall scan and send electronically copies of all requests for exclusion in PDF format (or such other format as shall be agreed) to Defendants' Counsel and to Lead Counsel expeditiously (and not more than five (5) business days) after the Claims Administrator receives such a request.  As part of the motion papers in support of the Settlement of the Litigation, Lead Counsel will cause to be provided a list of all the persons who have requested exclusion from the Class, and shall cause to be certified that all requests for exclusion received by the Claims Administrator have been copied and provided to Defendants' Counsel.

10. **No Admission of Wrongdoing**

10.1    Whether or not the Settlement in this Stipulation is approved by the Court, and whether or not it is consummated, the facts and terms of this Stipulation, including Exhibits, all negotiations, discussions, drafts, and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement:

(a)    shall not be offered or received against any of Defendants or their Related Parties as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of Defendants or their Related Parties with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that has been or could have been asserted in this Litigation or in any litigation, or the deficiency of any defense that has been or could have been asserted in this Litigation or in any litigation, or of any liability, negligence, fault, or wrongdoing of any of Defendants or their Related Parties;

(b)    shall not be offered or received against any of Defendants or their Related Parties as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by any of Defendants or their Related Parties of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of Defendants;

(c)    shall not be offered or received against any of Defendants or their Related Parties as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by any of Defendants or their Related Parties with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants or their Related Parties, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this

- 29 -

Stipulation; provided, however, that if this Stipulation is approved by the Court, the Released Parties may refer to it to effectuate the liability protection granted them hereunder;

(d)      shall not be offered or received against any of Defendants or their Related Parties as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by any of Defendants or their Related Parties that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e)      shall not be construed as or received into evidence as an admission, concession or presumption against Lead Plaintiffs or any other Class Members that any of their claims are without merit, or that any defenses asserted by any of Defendants have any merit, or that damages recoverable under the Complaint would not have exceeded the Gross Settlement Fund.

## 11.    Miscellaneous Provisions

11.1    The headings herein are used for the purposes of convenience only and are not meant to have legal effect.

11.2    The Settling Parties (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of the Stipulation.

11.3    The Settling Parties to this Stipulation intend the Settlement of the Litigation to be the full, final and complete resolution of all claims asserted or which could have been asserted by the Class Members against the Released Parties with respect to the Released Claims. Accordingly, the Settling Parties agree not to assert in any forum or tribunal that the Litigation was brought, prosecuted or defended in bad faith or without a reasonable basis. The Judgment shall contain a finding that at all times each Settling Party and his, her, or its counsel has complied fully with Rule

- 30 -

11 of the Federal Rules of Civil Procedure in connection with the maintenance, prosecution, defense and settlement of the Litigation.  The Settling Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the Settling Parties, and their respective counsel, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

11.4    The Settling Parties shall refrain from any accusations of wrongful or actionable conduct by either party concerning the prosecution and resolution of the Litigation, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

11.5    Neither the Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, arbitration, administrative agency or other tribunal.  The Released Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of, without limitation, claim preclusion or issue preclusion or similar defense or counterclaim.

11.6    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation, pursuant to their terms.

11.7    All of the Exhibits to the Stipulation are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or

855054_4

inconsistency between the terms of this Stipulation and the terms of any Exhibit hereto, the terms of this Stipulation shall prevail.

      11.8    This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that the Stipulation is the result of arm's-length negotiations between the Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

      11.9    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

      11.10   The Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto and no representations, warranties or inducements have been made to any Settling Party concerning the Stipulation or its Exhibits or the Supplemental Agreement other than the representations, warranties and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Settling Party shall bear its own costs.

      11.11   Lead Counsel, on behalf of the Class, is expressly authorized by the Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which it deems appropriate.

      11.12   Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Settling Party hereto hereby warrants that such Person has the full authority to do so.

855054_4

11.13   The Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile or by email in PDF format.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

11.14   The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any party hereto may merge, consolidate or reorganize.

11.15   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

11.16   The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the Commonwealth of Massachusetts, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the Commonwealth of Massachusetts without giving effect to that Commonwealth's choice-of-law principles, except to the extent that federal law requires that federal law governs.

11.17   The Settling Parties agree that, prior to final approval of the Settlement, the Hon. Daniel Weinstein (Ret.) will continue to serve as a mediator for any disputes between them arising out of the Settlement.  The Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

11.18   A waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any prior or subsequent breach of this Stipulation.

11.19   The Settling Parties and their respective counsel of record agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Stipulation.

- 33 -

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of July 29, 2013.

SHAPIRO HABER & URMY LLP
THOMAS G. SHAPIRO (BBO # 454680)
ADAM M. STEWART (BBO # 661090)
53 State Street
Boston, MA  02109
Telephone:  617/439-3939
617/439-0134 (fax)
tshapiro@shulaw.com
astewart@shulaw.com

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY (admitted pro hac vice)
THOMAS E. EGLER (admitted pro hac vice)
JONAH H. GOLDSTEIN
SCOTT H. SAHAM (admitted pro hac vice)
SUSAN G. TAYLOR (admitted pro hac vice)
RYAN A. LLORENS (admitted pro hac vice)
NATHAN R. LINDELL (admitted pro hac vice)
IVY T. NGO (admitted pro hac vice)
L. DANA MARTINDALE (admitted pro hac vice)
DAVID J. HARRIS, JR. (admitted pro hac vice)


_____
        ARTHUR C. LEAHY

855054_4

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
tome@rgrdlaw.com
jonahg@rgrdlaw.com
scotts@rgrdlaw.com
susant@rgrdlaw.com
ryanl@rgrdlaw.com
nlindell@rgrdlaw.com
ingo@rgrdlaw.com
dmartindale@rgrdlaw.com
dharris@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN (admitted *pro hac vice*)
DAVID A. ROSENFELD (admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Plaintiff

ROBERT M. CHEVERIE & ASSOCIATES
GREGORY CAMPORA
Commerce Center One
333 E. River Drive, Suite 101
East Hartford, CT  06108
Telephone:  860/290-9610
860/290-9611 (fax)
camg@cheverielaw.com

- 35 -

CAVANAGH & O'HARA
PATRICK O'HARA
State Bar No. 03123235
407 East Adams Street
Springfield, IL 62701
Telephone: 217/544-1771
217/544-9894 (fax)
patrick@cavanagh-ohara.com

Additional Counsel for Plaintiff

GOODWIN PROCTER LLP
STEPHEN D. POSS (BBO #551760)
DANIEL ROESER (BBO #675223)

_____
STEPHEN D. POSS          7/29/2013

Exchange Place
53 State Street
Boston, MA 02109
Telephone: 617/570-1000
617/523-1231 (fax)
sposs@goodwinprocter.com
droeser@goodwinprocter.com

Attorneys for Nomura Asset Acceptance
Corporation, Alternative Loan Trust 2006-AF1,
Alternative Loan Trust 2006-AP1, John P.
Graham, Nathan Gorin, John McCarthy, and
David Findlay

WILMER CUTLER PICKERING
   HALE AND DORR LLP
WILLIAM H. PAINE (BBO# 550506)

_____
WILLIAM H. PAINE

- 36 -

CAVANAGH & O'HARA
PATRICK O'HARA
State Bar No. 03123235
407 East Adams Street
Springfield, IL  62701
Telephone: 217/544-1771
217/544-9894 (fax)
patrick@cavanagh-ohara.com

Additional Counsel for Plaintiff

GOODWIN PROCTER LLP
STEPHEN D. POSS (BBO #551760)
DANIEL ROESER (BBO #675223)


_____
                 STEPHEN D. POSS

Exchange Place
53 State Street
Boston, MA  02109
Telephone:  617/570-1000
617/523-1231 (fax)
sposs@goodwinprocter.com
droeser@goodwinprocter.com

Attorneys for Nomura Asset Acceptance
Corporation, Alternative Loan Trust 2006-AF1,
Alternative Loan Trust 2006-AP1, John P.
Graham, Nathan Gorin, John McCarthy, and
David Findlay

WILMER CUTLER PICKERING
  HALE AND DORR LLP
WILLIAM H. PAINE (BBO# 550506)


_____
                 WILLIAM H. PAINE

60 State Street
Boston, MA 02109
Telephone:  617/526-6134
617/526-5000 (fax)
william.paine@wilmerhale.com

Attorneys for Nomura Securities International, Inc.

855054_4

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2013, I authorized the electronic filing of the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies

will be sent to those indicated as non-registered participants on August 1, 2013.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on August 1, 2013.

s/ CODY R. LeJEUNE
CODY R. LeJEUNE

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  clejeune@rgrdlaw.com

859916_1